James W. McConkie III (8614); Email: jmcconkie@wnlaw.com
David P. Johnson (13260); Email: djohnson@wnlaw.com
WORKMAN │ NYDEGGER A PROFESSIONAL CORPORATION
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC. a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN CHRISTENSEN, an individual<br><br>Defendant. | **MOTION FOR DEFAULT JUDGMENT**<br><br>**2:18-CV-00313-JNP-PMW**<br><br>**Judge Jill N. Parrish** |

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff Vivint, Inc. ("Vivint") respectfully moves the Court for an entry of default judgment against Defendant Brian Christensen ("Defendant") finding that Defendant violated 15 U.S.C. §§ 1114(1), 1125(a), (c), and (d)(1)(A)-(B) and Utah Code Ann. §§ 13-5A-103 and 70-3a-309(1)(a), and imposing an order for relief against Defendant. Defendant has failed to appear or defend against Vivint's Complaint, and an Entry of Default has been entered against Defendant. Accordingly, under Fed. R. Civ. P. 55, the Court has authority to enter a default judgment against Defendant.

## I.      INTRODUCTION

Vivint is a leading smart home technology provider, offering smart home products and services to customers throughout the United States and Canada. [Dkt. No. 2, Complaint, ¶ 7.]  In connection with this business, Vivint owns U.S. Trademark Registration Nos. 4,166,498, 4,392,692,

4,392,693, 4,459,451, 4,166,498, 4,388,507, and 4,094,587, as well as numerous common law rights, for the mark VIVINT ("Vivint's Mark" or "the Mark"). [*Id.*, ¶ 9.]

Defendant signed a Sales Representative Employment Agreement with Vivint's affiliate Smart Home Pros, Inc. ("Smart Home Pros") on December 9, 2016. [*Id.*, ¶ 10.] On or about April 5, 2017, without Vivint's knowledge or permission, Defendant registered the domain www.vivint.io ("the Infringing Domain") with GoDaddy.com, LLC. [*Id.*, ¶ 11.] Defendant's agreement with Smart Home Pros terminated on November 17, 2017. [*Id.*, ¶ 14.] Vivint's counsel sent Defendant a letter on January 15, 2018 demanding that Defendant cease and desist all use of the Infringing Domain, transfer the Infringing Domain to Vivint, and cease and desist all uses of Vivint's Mark. [Dkt. No. 2, Complaint, ¶ 15.] Vivint sent multiple additional notices to Defendant, including a letter on March 20, 2018. [*See* Declaration of James W. McConkie, III in Support of Motion for Default Judgment ("McConkie Declaration"), ¶ 3, Exh. A.] On April 6, 2018, Vivint sent Defendant a copy of a complaint and informed Defendant that Vivint would file the complaint if Defendant did not cease and desist his infringement. [*Id.*, ¶ 4, Exh. B.] Despite receiving these notices, Defendant has continued to infringe Vivint's intellectual property rights. [*Id.*, ¶ 17, 27.]

On April 16, 2018, Vivint filed the complaint against Defendant ("the Complaint"), alleging trademark infringement, trademark dilution, unfair competition, and cybersquatting, and seeking remedies in the form of a permanent injunction enjoining further use of Vivint's Mark, an order directing the transfer of the Infringing Domain to Vivint, and monetary damages. [*See* Dkt. No. 2, Complaint.] Defendant was personally served with a copy of the Complaint on April 18, 2018, but failed to timely respond. [Dkt. No. 13, Motion for Entry of Default, p. 1–2.] Upon a motion by Vivint, the Clerk of Court entered a default against Defendant on July 10, 2018. [Dkt. No. 14, Default Certificate.]

Vivint respectfully requests entry of judgment awarding Vivint the relief requested in its Complaint due to Defendant's failure to appear or otherwise defend the action.

## II.  ARGUMENT

The Federal Rules provide a two-step process for obtaining a default judgment. *Keith v. Koerner,* No. 11-cv-2281, 2016 WL 4541447, at *2 (D. Kan. Aug. 30, 2016). First, the Clerk of the Court must enter a default against the defendant for failing to plead or otherwise defend the suit. *Id.* After the default is entered, the defendant is deemed to have admitted the well-pleaded facts in the complaint. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In cases such as this where the Plaintiff seeks a default judgment requesting something more than a sum certain, the plaintiff must then apply to the Court for said judgment under Fed. R. Civ. P. 55(b)(2). *Keith*, 2016 WL 4541447, at *2.  *See also* DUCivR 55-1(b)(2).  In deciding whether to grant the plaintiff's application, the Court must "consider whether the unchallenged facts constitute a legitimate cause of action," and whether there is a sufficient basis in the pleadings for the requested judgment. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

As explained below, Vivint has demonstrated legitimate causes of action against Defendant sufficient to sustain the requested relief.

### A.  Defendant has Infringed Vivint's Mark

The undisputed facts in the Complaint demonstrate that Defendant has infringed Vivint's Mark in violation of the Lanham Act. Vivint owns several Federal trademark registrations for the Mark, including Reg. Nos. 4,166,498, 4,392,692, 4,392,693, 4,459,451, 4,166,498, 4,388,507, and 4,094,587. [*See* Dkt. No. 2, Complaint, ¶ 9.] These registrations serve as *prima facie* evidence of the validity of Vivint's Mark. 15 U.S.C. § 1115(a).

The Lanham Act prohibits use in commerce of a mark in a manner that is likely to cause confusion among consumers. *See* 15 U.S.C. § 1114(1)(a). 10th Circuit courts consider the following factors to determine whether a likelihood of confusion exists between two marks:

(1) the degree of similarity between the marks;

(2) the intent of the alleged infringer in adopting its mark;

(3) evidence of actual confusion;

(4) similarity of products and manner of marketing;

(5) the degree of care likely to be exercised by purchasers; and

(6) the strength or weakness of the marks.

*Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

An analysis of these factors demonstrates that the Infringing Domain is likely to cause confusion among consumers. First, the Infringing Domain—"vivint.io"—uses Vivint's mark VIVINT in its entirety. The addition of the suffix ".io" does not differentiate the marks. *See, e.g.*, *Rasmussen v. Gen. Growth Properties, Inc.*, No. 2:04-CV-00099, 2005 WL 3334752, at *4 (D. Utah Dec. 7, 2005) (finding the marks "Provo Towne Centre" and "provotownecentre.com" to be "virtually identical"). Such close identity between the marks "gives rise to a strong inference of confusion." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 297 (3rd Cir. 1991).

Second, upon information and belief, Defendant registered the Infringing Domain in bad faith, and has not used it for any legitimate purpose. [Dkt. No. 2, Complaint, ¶ 12.] Defendant signed a Sales Representative Employment Agreement with Vivint's affiliate before registering the Infringing Domain, and knew about Vivint's Mark before he registered the Infringing Domain. [*Id.*, ¶¶ 10, 26.] Despite his knowledge of Vivint's Mark, Defendant registered the Infringing

Domain for his own use and benefit and has ignored Vivint's requests to transfer the Infringing Domain to Vivint.

Third, Vivint's Mark is strong. When analyzing the strength of a mark, the 10th Circuit looks at the mark's conceptual strength (i.e., its placement on the "fanciful-suggestive-descriptive spectrum") and its commercial strength (i.e., the marketplace recognition of the mark). Each of these factors demonstrates the strength of Vivint's Mark. First, Vivint's Mark is fanciful. Fanciful marks consist of a word or words that have been created for the sole purpose of serving as a trademark, and are "considered the strongest of marks because their inherent novelty creates a substantial impact on the buyer's mind." *See, e.g., Aveda Corp. v. Evita Marketing, Inc.*, 706 F. Supp. 1419, 1438 (D. Minn. 1989). Vivint's Mark VIVINT has no meaning in English or any other language and was created for the sole purpose of serving as a trademark, demonstrating the conceptual strength of the mark. Second, there is extensive marketplace recognition of Vivint's Mark. Vivint widely markets and advertises its services and has expended substantial time, money, and resources building its brand. [*Id.*, ¶ 2.] Vivint's Mark has become famous in the United States through Vivint's extensive, continuous, and exclusive use of it in connection with Vivint's products and services. [*Id.*, ¶ 36.] Thus, Vivint's Mark also has great commercial strength.

These considerations demonstrate a likelihood of confusion between the Infringing Domain and Vivint's Mark, and subsequent infringement of Vivint's intellectual property rights.

### B.     Defendant's Use of the Mark Constitutes Trademark Dilution

Defendant's use of the Infringing Domain further constitutes trademark dilution. The Lanham Act provides a cause of action against anyone whose use of another's famous, distinctive mark is likely to cause dilution of that mark "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). A mark is

famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," considering factors such as the duration, extent, and geographic reach or marketing of the mark, the amount, volume, and geographic extent of sales of goods and services under the mark, the extent of actual recognition of the mark, and whether the mark has been registered on the principal register. 15 U.S.C. § 1125(c)(2)(A)(i)–(iv).

Vivint's Mark is famous as required by the Lanham Act. Vivint is a leading smart home technology provider, and markets its goods and services to customers throughout the United States. [Dkt. No. 2, Complaint, ¶ 7.] Prior to Defendant's use of the Mark, Vivint's Mark had become famous in the United States through Vivint's extensive, continuous, and exclusive use of Vivint's Mark in connection with Vivint's products and services. [*Id.*, ¶ 36–37.] Furthermore, Vivint's Mark has been registered on the principal register. [*Id.*, ¶ 9.]

Defendant's registration and use of the Infringing Domain has caused dilution of Vivint's Mark. Dilution by blurring occurs when an association between the infringing mark and a famous mark impairs the distinctiveness of the famous mark. 15 U.S.C. § 1125(c)(2)(B). The Infringing Domain is nearly identical to Vivint's Mark, and Defendant's use of the Infringing Domain is likely to dilute the distinctive nature of Vivint's Mark and to tarnish its reputation. [Dkt. No. 2, Complaint, ¶ 39.]

Thus, Defendant's registration and use of the Infringing Domain constitutes dilution of Vivint's Mark.

## C.    **Defendant's Actions Constitute Unfair Competition**

Defendant's use and registration of the Infringing Domain also constitute unfair competition under Federal and Utah law. As shown above, Defendant's registration and use of the

Infringing Domain constitutes trademark infringement. Trademark infringement "is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B)." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008); *see also Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 483 (8th Cir. 1967) ("Trademark infringement is but a part of the broader law of unfair competition, and facts supporting a suit for infringement and one for unfair competition are substantially identical."). As shown above, Defendant has infringed Vivint's trademark rights; thus, he is liable for federal unfair competition as well.

Defendant has also violated the Utah Unfair Competition Act ("the UCA"), which prohibits intentional business acts or practices that are 1) unlawful, unfair, or fraudulent, 2) lead to a material diminution in value of intellectual property, and 3) infringe a trademark right. Utah Code Ann. § 13-5A-102(4). Courts often require "something beyond simple trademark infringement" (or, in other words, "infringement-plus") to establish a violation of the UCA. *Poison Spider Bicycles, Inc. v. TAP Mfg., LLC*, No. 2:16-CV-00148, 2018 WL 836364, at *8 (D. Utah Feb. 12, 2018); s*ee also Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 1:10-CV-00209, 2015 WL 164607, at *3 (D. Utah Jan. 13, 2015) ("Icon's Unfair Competition Claim seeks to protect Icon from unethical or oppressive business practices, and is distinguishable from its patent infringement claim which seeks to protect Icon's patented inventions.").

Defendant has violated the UCA by registering and using the Infringing Domain, and by continuing to own and maintain the Infringing Domain in bad faith. [*See* Dkt. No. 2, Complaint, ¶ 11, 17.] Defendant is deemed to have admitted that he has used the Infringing Domain to wrongly trade on the goodwill associated with Vivint's Mark by, among other things, offering services not provided by Vivint or its affiliates on or through the Infringing Domain, and/or by making an

unauthorized offer to consumers of Vivint's services through the infringing domain. [*Id.*, ¶ 13.] These intentional business practices go beyond mere trademark infringement and constitute unfair competition under the UCA. *See*, *e.g.*, *Icon*, 2015 WL 164607 at *3 (finding that allegations of "an intentional business practice of stealing and copying [the plaintiff's] patented inventions as well as [the plaintiff's] time, effort, and talent that go into creating and developing the invention" constitute allegations of an "intentional business practice that … has an additional element not found in the federal patent law cause of action").

For these reasons, Defendant should be found to have violated both Federal unfair competition law and the UCA.

### D.   Defendant is Liable for Cybersquatting

Defendant is liable for cybersquatting under both the Lanham Act (15 U.S.C. § 1125(d)) and the Utah E-Commerce Integrity Act (Utah Code Ann. § 70-3a-309(1)(a)). Utah's cybersquatting act is nearly identical to the cybersquatting provisions under the Lanham Act, and claims under each Act may be considered together. *See One Source Industries, Inc. v. Parkinson*, 2013 WL 2149722, *3 (D. Utah 2013).

A party is liable under the Cybersquatting Acts if he registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, and has a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A); Utah Code Ann. § 70-3a-309(1)(a). The Infringing Domain, "vivint.io," is nearly identical to Vivint's Mark VIVINT, and the allegations of the Complaint, which are now deemed to be admitted, state that Defendant has a bad faith intent to profit from the Mark. [Dkt. No. 2, Complaint, ¶ 63.] Defendant's repeated refusal to acknowledge and/or respond to Vivint's multiple requests to discontinue use of the Mark VIVINT in connection with or to identify the Infringing Domain is further evidence of bad faith. *See*

*McConkie Declaration* ¶¶ 3-4 and Exhibits A and B thereto.  Thus, Defendant has violated both 15 U.S.C. § 1125(d) and Utah Code Ann. § 70-3a-309(1)(a).

<strong>E.    Vivint is Entitled to the Remedies Requested in the Complaint</strong>

Vivint seeks injunctive and monetary relief in light of Defendant's unlawful actions detailed above. Specifically, Vivint has prayed for an order finding that:

A)    Defendant willfully violated 15 U.S.C. §§ 1114(1), 1125(a), (c), and (d)(1)(A)–(B);

B)    Defendant willfully violated Utah Code Ann. §§ 13-5A-103 and 70-3a-309(1)(a);

C)    Vivint has been damaged by such violations;

D)    Defendant is liable to Vivint for such violations; and

E)    This case is "exceptional" pursuant to 15 U.S.C. § 1117(a).

In addition, Vivint seeks an injunction permanently enjoining Defendant from continuing to infringe Vivint's Mark, an order to transfer the Infringing Domain to Vivint, and an award of statutory damages, as well as an award of Vivint's costs and attorney's fees.

<strong>1.    Injunctive Relief is Appropriate and Necessary</strong>

Vivint has requested an injunction permanently enjoining "Defendant and his officers, employees, agents, successors, and assigns, and all those in active concert and participation with them,…from using the mark VIVINT and any confusingly similar marks, including in connection with any domain name." Such an injunction is appropriate and necessary in light of Defendant's continued use and control of the Infringing Domain, failure to plead, default in this action, and further in light of Vivint's interest in protecting its intellectual property rights.

A party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each of these factors weighs in favor of injunctive relief.

First, Vivint has demonstrated irreparable injury. In a trademark infringement action, "infringement alone can constitute irreparable injury and … the movant is not required to show that it lost sales or incurred other damage." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). When a markholder has demonstrated a likelihood of confusion, "irreparable injury is presumed." *Orbit Irr. Prod. v. Sunhills Int'l*, No. 1:10-CV-113, 2015 WL 1393232, at \*7 (D. Utah Mar. 25, 2015). Defendant's infringement of Vivint's Mark is demonstrated above, and constitutes irreparable injury to Vivint.

Second, Vivint has demonstrated that remedies available at law are inadequate to compensate for that injury. Trademark rights are based on exclusive use, and uncontrolled use of a trademark by a third party leads to the erosion of a markholder's rights in its mark. Injunctive relief is "the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). As noted above, Vivint's counsel sent Defendant a letter on January 15, 2018 demanding that Defendant cease and desist all use of the Infringing Domain, transfer the Infringing Domain to Vivint, and cease and desist all uses of Vivint's Mark. [Dkt. No. 2, Complaint, ¶ 15.] Despite receiving this notice, Defendant has continued to infringe Vivint's intellectual property rights. [*Id.*, ¶ 17, 27.] Injunctive relief is necessary to prevent Defendant's continued infringement.

Third, the balance of hardships weighs in favor of granting injunctive relief. On one hand, Vivint is a leading smart home technology provider and has expended substantial time, money,

and resources building its brand. [*Id.*, ¶ 7–8.] On the other hand, the undisputed facts in the Complaint demonstrate that Defendant has willfully and in bad faith used Vivint's Mark in commerce without authorization. [*Id.*, ¶ 23.] Vivint's interests in protecting its intellectual property and reputation vastly outweigh Defendant's interests in continuing his infringing activities.

Fourth, the public interest would not be disserved by a permanent injunction. Protecting registered trademarks is "consistent with the public interest because trademarks foster competition and promote the maintenance of quality in business." *ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-cv-00207, 2012 WL 3962737, at *6 (D. Utah Sept. 11, 2012). Enjoining Defendant's use of Vivint's Mark will prevent any consumer confusion that would arise if consumers believed Defendant is associated or affiliated with Vivint.

For these reasons, an injunction is merited.

### 2.    Transfer of the Domain Name is Warranted Under the Lanham Act and Utah Law

Vivint also seeks the transfer of the domain name from Defendant to Vivint. A trademark owner who succeeds in a civil action under Utah Code § 70-3a-309 or the Lanham Act may request the transfer of the domain name to the trademark owner. Utah Code § 70-3a-309(d)(i); 15 U.S.C. § 1125(d)(2)(D)(i). *See*, *e.g.*, *Rasmussen*, 2005 WL 3334752 at *5 ("Since defendants are entitled to summary judgment, they also are entitled to the domain names that form the basis of this lawsuit."). As explained above, Vivint has shown that Defendant has violated Utah Code § 70-3a-309 and the Lanham Act. Thus, the Order of this Court should issue directing the immediate transfer of the Infringing Domain to Vivint.

### 3.    Statutory Damages are Merited Pursuant to the Lanham Act

Vivint further requests an award of statutory damages. The Lanham Act allows a plaintiff to elect an award of statutory damages in cases "involving the use of a counterfeit mark."[1] 15 U.S.C. § 1117(c). "Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain," and can be particularly appropriate when a defendant has defaulted in a trademark infringement action. *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165–166 (S.D.N.Y. 1999).

Statutory damages may range from $1,000 to $200,000 per counterfeit mark per type of goods and services, to a maximum of $2,000,000 per counterfeit mark per type of goods or services when the infringement is willful. 15 U.S.C. § 1117(c). The Court enjoys broad discretion to award statutory damages "as the court considers just." *Id.* at 166. Factors often considered in an award of statutory damages include:

> (1) the [defendant's] expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [mark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Klein-Becker USA, LLC v. Englert*, No. 2:06-CV-378, 2011 WL 147893, at *14 (D. Utah Jan. 18, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013).

Factors 3, 4, 5, 6, and 7 weigh in favor of an award of statutory damages to Vivint. First, Vivint's Mark is very valuable to Vivint. Vivint has expended substantial time, money, and resources building its brand. [Dkt. No. 2, Complaint, ¶ 8.] The value of Vivint's Mark is illustrated in part by Vivint's acquisition of at least seven Federal trademark registrations in relation to its Mark. [*See id.*,

---

[1] The Lanham Act defines a "counterfeit mark" as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i).

¶ 9.] Second, Defendant has registered, used, and retained the Infringing Domain with full knowledge of Vivint's trademark rights. [*See id.*, ¶¶ 10–12, 15–16, 26.] Such willful infringement weighs in favor of an award of statutory damages. Third, Defendant has made no attempt to provide records to assess the value of the Infringing Domain to Defendant. Statutory damages are an appropriate remedy to ensure Defendant is not rewarded for his bad-faith, dilatory behavior. *See Sara Lee*, 36 F. Supp. 2d at 165–166. Finally, an award of statutory damages would have a deterrent effect on Defendant and others who may be tempted to infringe other's intellectual property rights by acquiring domain names consisting of registered trademarks.

With these considerations in mind, the Court should enter an award of statutory damages against Defendant in the amount of $5,000.00. This minimal award is calculated to serve as a deterrent against future misbehavior while not unduly burdening Defendant.

### a)   An Award of Attorney's Fees is Merited Pursuant to the Lanham Act and the Utah Unfair Competition Act

Vivint also requests an award of its attorney's fees and costs incurred in pursuing this matter. Attorney's fees and costs are permitted under, among others, 15 U.S.C. § 1117 and Utah Code Ann. § 13-5a-103. An award of fees and costs is particularly appropriate when a defendant fails to participate meaningfully in an action against him.

For instance, in *Zundel v. Taunton*, a trademark holder brought suit against a defendant under the Lanham Act and the Utah Unfair Competition Act. *Zundel v. Taunton*, No. 2:07-CV-00023, 2009 WL 197814, at *2 (D. Utah Jan. 26, 2009). The defendant failed to timely respond to the complaint, and despite her knowledge of the action against her, "ignored or otherwise refused to participate in the case." *Id.*, *2, *4. The Court granted the trademark holder's motion for judgment on the pleadings, and awarded the trademark holder its attorney fees and costs under Utah Code § 13-5a-103. *Id.*; *see also Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-CV-00729, 2017 WL 2258362, at *17 (D. Utah

May 22, 2017), *aff'd*, [No. 17-4096, 2018 WL 2684216](...) (10th Cir. June 5, 2018) (awarding costs and attorney's fees to the prevailing party based in part on Utah Code Ann. § 13-5a-103 and the Lanham Act).

As shown above, Vivint has expended considerable resources pursuing this action and in notifying Defendant of Vivint's rights. Despite his knowledge of Vivint's rights, Defendant has continued to retain and use the Infringing Domain, and has refused to participate in this action to determine the proper ownership thereof. Thus, an award of attorney's fees and costs under both the Lanham Act and the Utah Unfair Competition Act is merited.

As shown in the Declaration of James W. McConkie III, filed concurrently with this Motion, Vivint has incurred a total of $16,583.25 in fees and $999.74 in costs in pursuing this action. *See McConkie Declaration ¶ 6* and Exhibit C thereto. Vivint moves the Court to award Vivint its attorney's fees and costs in the amount of $17,582.99.

## III.   CONCLUSION

Defendant has willfully infringed Vivint's trademark rights in violation of Federal and Utah law. Defendant has ignored Vivint's requests to relinquish the Infringing Domain, and has now failed to appear and defend in this action. In view of Defendant's actions, Vivint respectfully requests that the Court enter a default judgment against Defendant in the manner outlined above, and to award Vivint monetary damages in the amount of $22,582.99.

WORKMAN NYDEGGER

Dated:  July 25, 2018                    By:  _/s/ James W. McConkie III_____

James W. McConkie III (USB No. 8614)
Email: jmcconkie@wnlaw.com
David P. Johnson_(USB No. 13260)
Email: djohnson@wnlaw.com
WORKMAN | NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111

Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for Plaintiffs*