James W. McConkie III (8614); Email: jmcconkie@wnlaw.com
David P. Johnson (13260); Email: djohnson@wnlaw.com
WORKMAN │ NYDEGGER A PROFESSIONAL CORPORATION
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC. a Utah corporation,<br><br>                              Plaintiff,<br>     v.<br><br>BRIAN CHRISTENSEN, an individual<br><br>                              Defendant. | **DECLARATION OF DUSTIN HOWELL IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**2:18-CV-00313-JNP-PMW**<br><br>**Judge Jill N. Parrish** |

I, Dustin Howell, declare under criminal penalty of the State of Utah that the following is true and correct:

1.     I am a member in good standing of the Utah State Bar and am duly licensed to practice by the Supreme Court of that State. I am an attorney with the firm of Workman Nydegger ("Workman") in Salt Lake City, Utah for Plaintiff Vivint, Inc. ("Vivint"). I have been practicing law for approximately eleven years. I am competent to testify to all matters contained herein.

2.     This Declaration is submitted in further support of Vivint's Motion for Default Judgment against Defendant Brian Christensen ("Christensen") in accordance with Court's Order of January 8, 2019 (Dkt. No. 20).

{F2350368.1 }

3.      On January 15, 2018, I prepared and caused to be delivered a letter to Christensen informing him of Vivint's trademark rights and demanding that he 1) cease and desist from using the VIVINT mark, and 2) immediately transfer the "vivint.io" domain name to Vivint. A copy of that letter is attached hereto as Exhibit A.

4.      When Christensen failed to respond to the letter, I prepared and caused to be delivered a follow up letter on January 29, 2018. A copy of that letter is attached hereto as Exhibit B.

5.      In my review of the "vivint.io" domain prior to sending the above described letters, I learned that the site was live and active and that it purported to gather information from potential customers interested in solar energy systems and services of the type and nature offered by certain Vivint licensees.  It was not clear from my review of the site whether the potential customers or sales leads were ever delivered to Vivint and/or its licensees or if they were delivered to some other solar energy provider.

6.      After sending the follow up letter described above, I learned that the "vivint.io" domain name had been redirected so as to resolve to www.vivintsolar.com.

7.      On January 29, 2018, I was contacted by an attorney named Patrick J. Ascione who explained that he had been retained to represent Christensen.

8.      I learned from Mr. Ascione that Christensen had redirected "vivint.io" and wanted to meet with Vivint in order to work out a business relationship going forward.  More specifically, Christensen would not transfer the "vivint.io" domain to Vivint unless and until Vivint agreed to pay commissions to Christensen for any potential customers or sales leads he could generate.

9.      So long as Christensen maintained control over the "vivint.io" site, Vivint was unwilling to consider any such agreement.  Christensen refused to transfer the site to Vivint unless and until he received the commissions agreement he was seeking.

10.     A copy of a letter outlining the parties' respective positions, which I prepared and caused to be delivered to Mr. Ascione on February 9, 2018, is attached hereto as Exhibit C.

11.     On February 28, 2018, I received an email from Mr. Ascione indicating that he no longer represented Christensen.  A copy of Mr. Ascione's email is attached hereto as Exhibit D.

12.     Eventually, Christensen stopped communicating with me or with Vivint.

13.     Christensen's refusal to discontinue the site or transfer the same to Vivint left the company with no other option than to take steps to force Christensen to relinquish the site.

14.     It is my professional experience that, the recovery of infringing domain names is handled through the Uniform Domain-Name Dispute-Resolution Policy ("UDRP") established by the Internet Corporation for Assigned Names and Numbers ("ICANN"). These proceedings generally lead to quick, cost-effective solutions for clients whose trademarks are used in internet domain names without authorization.

15.     However, UDRP proceedings are governed by ICANN and can only be brought to recover domain names that are within ICANN's jurisdiction and control. All ".io" domains, including the "vivint.io" domain, fall outside or are not subject to ICANN's jurisdiction. Thus, ICANN rules do not apply to .io domains and the domains cannot be recovered in a UDRP proceeding.

16.     Rather than initiating a quick and cost-effective UDRP proceeding to seek possession and control of the "vivint.io" domain name, Vivint was therefore forced to file a more

{F2350368.1 }

3

costly lawsuit against Christensen.  Christensen ignored the lawsuit, leaving Vivint to seek the default judgment presently at issue.

17.    It has now been over a year since I sent the initial cease and desist letter to Christensen, and the "vivint.io" domain name is still in Christensen's possession and control.

In accordance with Utah Code Ann. § 78B-5-705, I declare under criminal penalty of the State of Utah that the foregoing is true and correct.

DATED this 22nd day of January, 2019.

__/s/ Dustin Howell_____